# HOUSE BILL 603

I3, S1 4lr1482
HB 901/23 – ECM CF SB 571

By: **Delegates Solomon, Wilson, and Love**
Introduced and read first time: January 24, 2024
Assigned to: Economic Matters

Committee Report: Favorable with amendments
House action: Adopted
Read second time: March 2, 2024

CHAPTER ______

AN ACT concerning

**Consumer Protection – Online Products and Services – Data of Children (Maryland Kids Code)**

FOR the purpose of requiring a covered entity that offers an online product reasonably likely to be accessed by children to complete a certain data protection impact assessment under certain circumstances; requiring certain privacy protections for certain online products; prohibiting certain data collection and sharing practices; authorizing certain monitoring practices; and generally relating to the protection of online privacy of children.

BY repealing and reenacting, with amendments,
Article – Commercial Law
Section 13–301(14)(xl)
Annotated Code of Maryland
(2013 Replacement Volume and 2023 Supplement)

BY repealing and reenacting, without amendments,
Article – Commercial Law
Section 13–301(14)(xli)
Annotated Code of Maryland
(2013 Replacement Volume and 2023 Supplement)

BY adding to
Article – Commercial Law

EXPLANATION: **CAPITALS INDICATE MATTER ADDED TO EXISTING LAW.**
**[**Brackets**]** indicate matter deleted from existing law.
Underlining indicates amendments to bill.
~~Strike out~~ indicates matter stricken from the bill by amendment or deleted from the law by amendment.

Section 13–301(14)(xlii); and 14–4601 through ~~14–4612~~ 14–4613 to be under the new subtitle "Subtitle 46. Maryland Age–Appropriate Design Code Act"
Annotated Code of Maryland
(2013 Replacement Volume and 2023 Supplement)

Preamble

WHEREAS, The United Nations Convention on the Rights of the Child recognizes that children need special safeguards and care in all aspects of their lives, specifying how children's rights apply in the digital environment in General Comment No. 25; and

WHEREAS, As children spend more of their time interacting with the online world, the impact of the design of online products on their well–being has become a focus of significant concern; and

WHEREAS, There is widespread agreement at the international level, and bipartisan agreement in the United States, that more needs to be done to create a safer online space for children to learn, explore, and play; and

WHEREAS, Lawmakers around the globe have taken steps to enhance privacy protections for children based on the understanding that, in relation to data protection, greater privacy necessarily means greater security and well–being; and

WHEREAS, Children should be afforded protections not only by online products and services specifically directed at them, but by all online products they are likely to access, and thus covered entities should take into account the unique needs of different age ranges, including the following developmental stages: 0 to 5 years of age, or "preliterate and early literacy"; 6 to 9 years of age, or "core primary school years"; 10 to 12 years of age, or "transition years"; 13 to 15 years of age, or "early teens"; and 16 to 17 years of age, or "approaching adulthood"; and

WHEREAS, While it is clear that the same data protection regime may not be appropriate for children of all ages, children of all ages should nonetheless be afforded privacy and protection, and online products should adopt data protection regimes appropriate for children of the ages likely to access those products; and

WHEREAS, According to the Pew Research Center, in 2022, 97% of American teenagers aged 13–17 used the Internet every day, with 46% responding they used the Internet almost constantly; and, additionally, 36% of teens reported being concerned about their social media use, while an earlier Pew Research Center study found that 59% of teens have been bullied or harassed online; and

WHEREAS, The findings of the Pew Research Center are not surprising, given what is known about controllers' use of personal data and how it is utilized to inform manipulative practices, to which children are particularly vulnerable; and

WHEREAS, Online products that are likely to be accessed by children should offer strong privacy protections that, by design, prevent the use of children's personal data to offer elements that the covered entity offering the online product knows, or has reason to know, are likely to be materially detrimental to the physical health, mental health, or well–being of children; and

WHEREAS, Ensuring robust privacy, and thus safety, protections for children by design is consistent with federal safety laws and policies applied to children's products, regulating everything from toys to clothing to furniture and games; and

WHEREAS, The consumer protections that federal safety laws apply to children's products require these products to comply with certain safety standards by their very design, so that harms to children, and in some cases other consumers, are prevented; and

WHEREAS, It is the intent of the Maryland General Assembly that the Maryland Age–Appropriate Design Code Act promote innovation by covered entities whose online products are likely to be accessed by children by ensuring that those online products are designed in a manner that recognizes the distinct needs of children within different age ranges; ~~and~~ now, therefore,

~~WHEREAS, It is the intent of the Maryland General Assembly that covered entities covered by the Maryland Age–Appropriate Design Code Act may look to guidance and innovation in response to the Age–Appropriate Design Code established in the United Kingdom and California when developing online products that are likely to be accessed by children; now, therefore,~~

SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF MARYLAND, That the Laws of Maryland read as follows:

**Article – Commercial Law**

13–301.

Unfair, abusive, or deceptive trade practices include any:

(14) Violation of a provision of:

(xl) Title 14, Subtitle 13 of the Public Safety Article; **[**or**]**

(xli) Title 14, Subtitle 45 of this article; or

**(XLII) TITLE 14, SUBTITLE 46 OF THIS ARTICLE; OR**

**SUBTITLE 46. MARYLAND AGE–APPROPRIATE DESIGN CODE ACT.**

**14–4601.**

**(A) IN THIS SUBTITLE THE FOLLOWING WORDS HAVE THE MEANINGS INDICATED.**

**(B) (1) "AGGREGATE CONSUMER INFORMATION" MEANS INFORMATION:**

**(I) THAT RELATES TO A GROUP OR CATEGORY OF CONSUMERS;**

**(II) FROM WHICH INDIVIDUAL CONSUMER IDENTITIES HAVE BEEN REMOVED; AND**

**(III) THAT IS NOT LINKED OR REASONABLY LINKABLE TO ANY CONSUMER OR HOUSEHOLD, INCLUDING BY A DEVICE.**

**(2) "AGGREGATE CONSUMER INFORMATION" DOES NOT INCLUDE INDIVIDUAL CONSUMER RECORDS THAT HAVE BEEN DE–IDENTIFIED.**

**(C) "BEST INTERESTS OF CHILDREN" MEANS A COVERED ENTITY'S USE OF THE PERSONAL DATA OF ~~A CHILD~~ CHILDREN OR THE DESIGN OF AN ONLINE PRODUCT IN A WAY THAT DOES NOT:**

**(1) BENEFIT THE COVERED ENTITY TO THE DETRIMENT OF ~~A CHILD~~ CHILDREN; AND**

**(2) RESULT IN:**

**(I) REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO ~~A CHILD~~ CHILDREN;**

**(II) SEVERE AND REASONABLY FORESEEABLE PSYCHOLOGICAL OR EMOTIONAL HARM TO ~~A CHILD~~ CHILDREN;**

**(III) A HIGHLY OFFENSIVE INTRUSION ON ~~A CHILD'S~~ CHILDREN'S REASONABLE EXPECTATION OF PRIVACY; OR**

**(IV) DISCRIMINATION AGAINST ~~A CHILD~~ CHILDREN BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, GENDER IDENTITY, SEX, OR SEXUAL ORIENTATION.**

**(D) (1) "BIOMETRIC ~~INFORMATION~~ DATA" MEANS ~~INFORMATION~~ DATA GENERATED BY AUTOMATIC MEASUREMENTS OF AN INDIVIDUAL'S BIOLOGICAL CHARACTERISTICS.**

**(2) "BIOMETRIC ~~INFORMATION~~ DATA" INCLUDES:**

**(I) A FINGERPRINT;**

**(II) A VOICEPRINT;**

**(III) AN EYE RETINA OR IRIS PATTERN; OR**

**(IV) ANY OTHER UNIQUE BIOLOGICAL PATTERN OR CHARACTERISTIC THAT IS USED TO IDENTIFY A SPECIFIC INDIVIDUAL.**

**(3) "BIOMETRIC ~~INFORMATION~~ DATA" DOES NOT INCLUDE:**

**(I) A DIGITAL OR PHYSICAL PHOTOGRAPH;**

**(II) AN AUDIO OR VIDEO RECORDING; OR**

**(III) DATA GENERATED FROM A DIGITAL OR PHYSICAL PHOTOGRAPH, OR AN AUDIO OR VIDEO RECORDING, UNLESS THE DATA IS GENERATED TO IDENTIFY A SPECIFIC INDIVIDUAL.**

**(E) "CHILD" MEANS A CONSUMER WHO IS UNDER THE AGE OF 18 YEARS.**

**(F) (1) "COLLECT" MEANS TO BUY, RENT, GATHER, OBTAIN, RECEIVE, OR ACCESS PERSONAL DATA RELATING TO A CONSUMER.**

**(2) "COLLECT" INCLUDES:**

**(I) ~~ACTIVELY OR PASSIVELY RECEIVING~~ RECEIVING DATA FROM THE CONSUMER; AND**

**(II) OBSERVING THE CONSUMER'S BEHAVIOR.**

**(G) (1) "CONSUMER" MEANS AN INDIVIDUAL WHO IS A RESIDENT OF THE STATE~~, HOWEVER IDENTIFIED, INCLUDING BY A UNIQUE IDENTIFIER~~.**

**(2) "CONSUMER" DOES NOT INCLUDE AN INDIVIDUAL ACTING IN A COMMERCIAL OR EMPLOYMENT CONTEXT OR AS AN EMPLOYER, AN OWNER, A DIRECTOR, AN OFFICER, OR A CONTRACTOR OF A COMPANY, PARTNERSHIP, SOLE PROPRIETORSHIP, NONPROFIT ORGANIZATION, OR ~~GOVERNMENT AGENCY~~ GOVERNMENTAL UNIT WHOSE COMMUNICATIONS OR TRANSACTIONS WITH THE COVERED ENTITY OCCUR SOLELY WITHIN THE CONTEXT OF THAT INDIVIDUAL'S ROLE WITH THE COMPANY, PARTNERSHIP, SOLE PROPRIETORSHIP, NONPROFIT ORGANIZATION, OR ~~GOVERNMENT AGENCY~~ GOVERNMENTAL UNIT.**

(H) (1) "COVERED ENTITY" MEANS A SOLE PROPRIETORSHIP, A LIMITED LIABILITY COMPANY, A CORPORATION, AN ASSOCIATION, OR ANY OTHER LEGAL ENTITY THAT:

(I) IS ORGANIZED OR OPERATED FOR THE PROFIT OR FINANCIAL BENEFIT OF ITS SHAREHOLDERS OR OTHER OWNERS;

(II) COLLECTS CONSUMERS' PERSONAL ~~INFORMATION~~ DATA OR USES ANOTHER ENTITY TO COLLECT CONSUMERS' PERSONAL ~~INFORMATION~~ DATA ON ITS BEHALF;

(III) ALONE, OR JOINTLY WITH ITS AFFILIATES OR SUBSIDIARIES, DETERMINES THE PURPOSES AND MEANS OF THE PROCESSING OF CONSUMERS' PERSONAL DATA;

(IV) DOES BUSINESS IN THE STATE; AND

(V) 1. HAS ANNUAL GROSS REVENUES IN EXCESS OF $25,000,000, ADJUSTED EVERY ODD–NUMBERED YEAR TO REFLECT ADJUSTMENTS IN THE CONSUMER PRICE INDEX;

2. ANNUALLY BUYS, RECEIVES, SELLS, OR SHARES THE PERSONAL DATA OF 50,000 OR MORE CONSUMERS, HOUSEHOLDS, OR DEVICES, ALONE OR IN COMBINATION WITH ITS AFFILIATES OR SUBSIDIARIES, FOR THE COVERED ENTITY'S COMMERCIAL PURPOSES; OR

3. DERIVES AT LEAST 50% OF ITS ANNUAL REVENUES FROM THE SALE OF CONSUMERS' PERSONAL DATA.

(2) "COVERED ENTITY" INCLUDES:

(I) AN ENTITY THAT CONTROLS OR IS CONTROLLED BY A BUSINESS AND THAT SHARES A NAME, SERVICE MARK, OR TRADEMARK THAT WOULD CAUSE A REASONABLE CONSUMER TO UNDERSTAND THAT TWO OR MORE ENTITIES ARE COMMONLY OWNED; AND

(II) A JOINT VENTURE OR PARTNERSHIP COMPOSED OF BUSINESSES IN WHICH EACH HAS AT LEAST A 40% INTEREST IN THE JOINT VENTURE OR PARTNERSHIP.

(I) (1) "DARK PATTERN" MEANS A USER INTERFACE DESIGNED OR MANIPULATED WITH THE PURPOSE OF SUBVERTING OR IMPAIRING USER AUTONOMY, DECISION MAKING, OR CHOICE.

(2) "DARK PATTERN" INCLUDES ANY PRACTICE IDENTIFIED BY THE FEDERAL TRADE COMMISSION AS A DARK PATTERN.

**(J) "DATA PROTECTION IMPACT ASSESSMENT" OR "ASSESSMENT" MEANS A SYSTEMATIC SURVEY TO ASSESS COMPLIANCE WITH THE DUTY TO ACT IN THE BEST INTERESTS OF CHILDREN.**

**(K) "DEFAULT" MEANS A PRESELECTED OPTION ADOPTED BY THE COVERED ENTITY FOR AN ONLINE PRODUCT.**

~~(L) "DE-IDENTIFIED INFORMATION" MEANS DATA THAT CANNOT REASONABLY BE USED TO INFER INFORMATION ABOUT, OR OTHERWISE BE LINKED TO, AN IDENTIFIED OR IDENTIFIABLE INDIVIDUAL, IF THE COVERED ENTITY THAT POSSESSES THE DATA:~~

~~(1) TAKES REASONABLE MEASURES TO ENSURE THAT THE DATA CANNOT BE LINKED WITH AN INDIVIDUAL;~~

~~(2) PUBLICLY COMMITS TO:~~

~~(I) MAINTAIN AND USE THE DATA IN DE-IDENTIFIED FORM; AND~~

~~(II) NOT ATTEMPT TO RE-IDENTIFY THE INFORMATION; AND~~

~~(3) CONTRACTUALLY OBLIGATES ANY RECIPIENTS OF THE INFORMATION TO COMPLY WITH ALL PROVISIONS OF THIS SUBSECTION.~~

~~(M) "DERIVED DATA" MEANS DATA THAT ARE DERIVED FROM OTHER DATA OR INFORMATION, OR OTHERWISE OBTAINED THROUGH CORRELATIONS, PREDICTIONS, ASSUMPTIONS, INFERENCES, OR CONCLUSIONS DRAWN FROM FACTS OR EVIDENCE OR ANOTHER SOURCE OF INFORMATION OR DATA ABOUT A CHILD OR A CHILD'S DEVICE.~~

**~~(N)~~ (L) "DIVISION" MEANS THE DIVISION OF CONSUMER PROTECTION OF THE OFFICE OF THE ATTORNEY GENERAL.**

**~~(O)~~ (M) (1) "ONLINE PRODUCT" MEANS AN ONLINE SERVICE, PRODUCT, OR FEATURE.**

**(2) "ONLINE PRODUCT" DOES NOT INCLUDE:**

**(I) A TELECOMMUNICATIONS SERVICE, AS DEFINED IN 47 U.S.C. § 153;**

(II) THE SALE, DELIVERY, OR USE OF A PHYSICAL PRODUCT SOLD BY AN ONLINE RETAILER; OR

(III) A BROADBAND INTERNET ACCESS SERVICE, AS DEFINED IN 47 C.F.R. § 8.1(B).

~~(P)~~ (N) (1) "PERSONAL DATA" MEANS INFORMATION THAT IS LINKED OR REASONABLY ABLE TO BE LINKED~~, ALONE OR IN COMBINATION WITH OTHER INFORMATION,~~ TO AN IDENTIFIED OR IDENTIFIABLE INDIVIDUAL.

(2) "PERSONAL DATA" ~~INCLUDES DERIVED DATA THAT OTHERWISE MEETS THE DEFINITION IN PARAGRAPH (1) OF THIS SUBSECTION~~ DOES NOT INCLUDE:

(I) DE–IDENTIFIED DATA; OR

(II) PUBLICLY AVAILABLE INFORMATION.

~~(Q)~~ (O) (1) "PRECISE GEOLOCATION" MEANS ~~ANY DATA THAT IS:~~

~~(1) DERIVED FROM A DEVICE; AND~~

~~(2) USED OR INTENDED TO BE USED TO LOCATE A CONSUMER GEOGRAPHICALLY WITHIN A RADIUS OF UP TO 1,850 FEET~~ INFORMATION DERIVED FROM TECHNOLOGY THAT CAN PRECISELY AND ACCURATELY IDENTIFY THE SPECIFIC LOCATION OF A CONSUMER WITHIN A RADIUS OF 1,750 FEET.

(2) "PRECISE GEOLOCATION" INCLUDES LATITUDE AND LONGITUDE COORDINATES OF SIMILAR PRECISION TO THOSE PRODUCED BY A GLOBAL POSITIONING SYSTEM OR A SIMILAR MECHANISM.

(3) "PRECISE GEOLOCATION" DOES NOT INCLUDE:

(I) THE CONTENT OF COMMUNICATIONS;

(II) DATA GENERATED BY OR CONNECTED WITH A UTILITY COMPANY'S ADVANCED METERING INFRASTRUCTURE; OR

(III) DATA GENERATED BY EQUIPMENT USED BY A UTILITY COMPANY.

~~(R)~~ (P) (1) "PROCESS" MEANS ~~TO CONDUCT OR DIRECT ANY OPERATION THAT MAY BE PERFORMED ON PERSONAL DATA, WHETHER OR NOT BY~~

~~AUTOMATED MEANS~~ TO PERFORM AN OPERATION OR SET OF OPERATIONS BY MANUAL OR AUTOMATED MEANS ON PERSONAL DATA.

(2) "PROCESS" INCLUDES~~:~~

~~(I) COLLECTING PERSONAL DATA;~~

~~(II) USING PERSONAL DATA;~~

~~(III) STORING PERSONAL DATA;~~

~~(IV) DISCLOSING PERSONAL DATA;~~

~~(V) ANALYZING PERSONAL DATA;~~

~~(VI) DELETING PERSONAL DATA;~~

~~(VII) MODIFYING PERSONAL DATA; AND~~

~~(VIII) OTHERWISE HANDLING PERSONAL DATA~~ COLLECTING, USING, STORING, DISCLOSING, ANALYZING, DELETING, OR MODIFYING PERSONAL DATA.

~~(S)~~ (Q) ~~(1)~~ "PROFILING" MEANS ANY FORM OF AUTOMATED PROCESSING OF PERSONAL DATA THAT USES PERSONAL DATA TO EVALUATE, ANALYZE, OR PREDICT CERTAIN ASPECTS RELATING TO AN INDIVIDUAL, INCLUDING AN INDIVIDUAL'S ECONOMIC SITUATION, HEALTH, PERSONAL PREFERENCES, INTERESTS, RELIABILITY, BEHAVIOR, LOCATION, OR MOVEMENTS.

~~(2) "PROFILING" DOES NOT INCLUDE THE PROCESSING OF PERSONAL DATA THAT DOES NOT RESULT IN AN ASSESSMENT OR JUDGMENT ABOUT AN INDIVIDUAL.~~

~~(T)~~ (R) (1) "PUBLICLY AVAILABLE INFORMATION" MEANS INFORMATION THAT:

(I) IS LAWFULLY MADE AVAILABLE FROM FEDERAL, STATE, OR LOCAL GOVERNMENT RECORDS; OR

(II) A COVERED ENTITY HAS A REASONABLE BASIS TO BELIEVE IS LAWFULLY MADE AVAILABLE TO THE GENERAL PUBLIC BY THE CONSUMER OR BY WIDELY DISTRIBUTED MEDIA.

**(2) "PUBLICLY AVAILABLE INFORMATION" DOES NOT INCLUDE BIOMETRIC ~~INFORMATION~~ DATA COLLECTED BY A COVERED ENTITY ABOUT A CONSUMER WITHOUT THE CONSUMER'S KNOWLEDGE.**

**~~(U)~~ (S) "REASONABLY LIKELY TO BE ACCESSED BY CHILDREN" MEANS ~~REASONABLY EXPECTED~~ IT IS REASONABLE TO EXPECT THAT THE ONLINE PRODUCT WOULD BE ACCESSED BY CHILDREN, BASED ON SATISFYING ANY OF THE FOLLOWING CRITERIA:**

**(1) THE ONLINE PRODUCT IS DIRECTED TO CHILDREN AS DEFINED IN THE FEDERAL CHILDREN'S ONLINE PRIVACY PROTECTION ACT;**

**(2) THE ONLINE PRODUCT IS DETERMINED, BASED ON COMPETENT AND RELIABLE EVIDENCE REGARDING AUDIENCE COMPOSITION, TO BE ROUTINELY ACCESSED BY A SIGNIFICANT NUMBER OF CHILDREN;**

**(3) THE ONLINE PRODUCT IS SUBSTANTIALLY SIMILAR OR THE SAME AS AN ONLINE PRODUCT THAT SATISFIES ITEM (2) OF THIS SUBSECTION;**

**(4) THE ONLINE PRODUCT FEATURES ADVERTISEMENTS MARKETED TO CHILDREN;**

**(5) THE COVERED ENTITY'S INTERNAL RESEARCH FINDINGS DETERMINE THAT A SIGNIFICANT AMOUNT OF THE ONLINE PRODUCT'S AUDIENCE IS COMPOSED OF CHILDREN; OR**

**(6) THE COVERED ENTITY KNOWS OR SHOULD HAVE KNOWN THAT A USER IS A CHILD.**

**~~(V)~~ (T) (1) "SELL" MEANS TO TRANSFER, RENT, RELEASE, DISCLOSE, DISSEMINATE, MAKE AVAILABLE, OR OTHERWISE COMMUNICATE, WHETHER ORALLY, IN WRITING, OR BY ELECTRONIC OR OTHER MEANS, A CONSUMER'S PERSONAL DATA, IN A TRANSACTION FOR MONETARY OR OTHER VALUABLE CONSIDERATION BETWEEN A COVERED ENTITY AND A THIRD PARTY.**

**(2) "SELL" DOES NOT INCLUDE:**

**(I) THE DISCLOSURE OF PERSONAL DATA TO THE SERVICE PROVIDER THAT PROCESSES PERSONAL DATA ON BEHALF OF THE COVERED ENTITY;**

**(II) THE DISCLOSURE OF PERSONAL DATA TO A THIRD PARTY FOR PURPOSES OF PROVIDING A PRODUCT OR SERVICE REQUESTED BY THE CONSUMER;**

**(III) THE DISCLOSURE OR TRANSFER OF PERSONAL DATA TO AN AFFILIATE OR SUBSIDIARY OF THE COVERED ENTITY;**

**(IV) THE DISCLOSURE OF PERSONAL DATA WHERE THE CONSUMER DIRECTS THE COVERED ENTITY TO DISCLOSE THE PERSONAL DATA OR INTENTIONALLY USES THE COVERED ENTITY TO INTERACT WITH A THIRD PARTY; OR**

**(V) THE DISCLOSURE OR TRANSFER OF PERSONAL DATA TO A THIRD PARTY AS AN ASSET THAT IS PART OF AN ACTUAL OR PROPOSED MERGER, ACQUISITION, BANKRUPTCY, OR OTHER TRANSACTION, IN WHICH THE THIRD PARTY ASSUMES CONTROL OF ALL OR PART OF THE COVERED ENTITY'S ASSETS.**

~~**(W) (1) "SENSITIVE PERSONAL DATA" MEANS:**~~

~~**(I) PERSONAL DATA THAT REVEALS A CONSUMER'S:**~~

~~**1. SOCIAL SECURITY NUMBER, DRIVER'S LICENSE NUMBER, STATE IDENTIFICATION CARD NUMBER, OR PASSPORT NUMBER;**~~

~~**2. ACCOUNT LOGIN INFORMATION, FINANCIAL ACCOUNT NUMBER, DEBIT CARD NUMBER, OR CREDIT CARD NUMBER, IN COMBINATION WITH ANY REQUIRED SECURITY OR ACCESS CODE, PASSWORD, OR CREDENTIALS THAT ALLOW ACCESS TO AN ACCOUNT;**~~

~~**3. PRECISE GEOLOCATION;**~~

~~**4. RACIAL OR ETHNIC ORIGIN OR RELIGIOUS OR PHILOSOPHICAL BELIEFS;**~~

~~**5. MAIL, E MAIL, TEXT, OR MESSAGE CONTENTS, UNLESS THE COVERED ENTITY IS THE INTENDED RECIPIENT; OR**~~

~~**6. GENETIC DATA;**~~

~~**(II) BIOMETRIC INFORMATION THAT IS OR MAY BE PROCESSED FOR THE PURPOSE OF UNIQUELY IDENTIFYING A CONSUMER;**~~

~~**(III) PERSONAL DATA COLLECTED AND ANALYZED CONCERNING A CONSUMER'S HEALTH; OR**~~

~~**(IV) PERSONAL DATA COLLECTED AND ANALYZED CONCERNING A CONSUMER'S SEX LIFE OR SEXUAL ORIENTATION.**~~

~~**(2) "SENSITIVE PERSONAL DATA" DOES NOT INCLUDE PUBLICLY AVAILABLE INFORMATION.**~~

**~~(X)~~ (U) "SERVICE PROVIDER" MEANS A PERSON THAT PROCESSES PERSONAL DATA ON BEHALF OF A COVERED ENTITY AND THAT RECEIVES FROM OR ON BEHALF OF THE COVERED ENTITY A CONSUMER'S PERSONAL DATA FOR BUSINESS PURPOSES IN ACCORDANCE WITH A WRITTEN CONTRACT, IF THE CONTRACT PROHIBITS THE PERSON FROM:**

**(1) SELLING OR SHARING THE PERSONAL DATA;**

**(2) RETAINING, USING, OR DISCLOSING THE PERSONAL DATA FOR ANY PURPOSE OTHER THAN FOR THE BUSINESS PURPOSES SPECIFIED IN THE CONTRACT FOR THE COVERED ENTITY, INCLUDING RETAINING, USING, OR DISCLOSING THE PERSONAL DATA FOR A COMMERCIAL PURPOSE OTHER THAN THE BUSINESS PURPOSES SPECIFIED IN THE CONTRACT WITH THE COVERED ENTITY, OR AS OTHERWISE ALLOWED UNDER THIS SUBTITLE;**

**(3) RETAINING, USING, OR DISCLOSING THE PERSONAL DATA OUTSIDE THE DIRECT BUSINESS RELATIONSHIP BETWEEN THE SERVICE PROVIDER AND THE COVERED ENTITY; AND**

**(4) COMBINING THE PERSONAL DATA THAT THE SERVICE PROVIDER RECEIVES FROM, OR ON BEHALF OF, THE COVERED ENTITY WITH PERSONAL DATA THAT IT RECEIVES FROM, OR ON BEHALF OF, ANOTHER PERSON OR PERSONS, OR COLLECTS FROM ITS OWN INTERACTION WITH THE CONSUMER.**

**~~(Y)~~ (V) "SHARE" MEANS TO RENT, RELEASE, DISSEMINATE, MAKE AVAILABLE, TRANSFER, OR OTHERWISE COMMUNICATE, WHETHER ORALLY, IN WRITING, OR BY ELECTRONIC OR OTHER MEANS, A CONSUMER'S PERSONAL DATA TO A THIRD PARTY FOR CROSS–CONTEXT BEHAVIORAL ADVERTISING WHETHER OR NOT FOR MONETARY OR OTHER VALUABLE CONSIDERATION, INCLUDING IN A TRANSACTION BETWEEN A COVERED ENTITY AND A THIRD PARTY FOR TARGETED ADVERTISING FOR THE BENEFIT OF A COVERED ENTITY IN WHICH NO MONEY IS EXCHANGED.**

~~**(Z) (1) "TARGETED ADVERTISING" MEANS DISPLAYING ADVERTISEMENTS TO A CONSUMER WHERE THE ADVERTISEMENT IS SELECTED BASED ON PERSONAL DATA OBTAINED OR INFERRED FROM THAT CONSUMER'S ACTIVITIES OVER TIME AND ACROSS NONAFFILIATED INTERNET WEBSITES OR ONLINE APPLICATIONS TO PREDICT THE CONSUMER'S PREFERENCES OR INTERESTS.**~~

~~**(2) "TARGETED ADVERTISING" DOES NOT INCLUDE:**~~

~~(I) ADVERTISEMENTS BASED ON ACTIVITIES WITHIN A COVERED ENTITY'S OWN INTERNET WEBSITES OR ONLINE APPLICATIONS;~~

~~(II) ADVERTISEMENTS BASED ON THE CONTEXT OF A CONSUMER'S CURRENT SEARCH QUERY, VISIT TO AN INTERNET WEBSITE, OR USE OF AN ONLINE APPLICATION;~~

~~(III) ADVERTISEMENTS DIRECTED TO A CONSUMER IN RESPONSE TO THE CONSUMER'S REQUEST FOR INFORMATION OR FEEDBACK; OR~~

~~(IV) PROCESSING PERSONAL DATA SOLELY TO MEASURE OR REPORT ADVERTISING FREQUENCY, PERFORMANCE, OR REACH.~~

~~(AA)~~ (W) "THIRD PARTY" MEANS A PERSON WHO IS NOT:

(1) THE COVERED ENTITY WITH WHICH THE CONSUMER INTENTIONALLY INTERACTS AND THAT COLLECTS PERSONAL DATA FROM THE CONSUMER AS PART OF THE CONSUMER'S INTERACTION WITH THE COVERED ENTITY; OR

(2) A SERVICE PROVIDER FOR THE COVERED ENTITY.

**14–4602.**

THIS SUBTITLE DOES NOT APPLY TO:

(1) DATA SUBJECT TO A STATUTE OR REGULATION IDENTIFIED UNDER ITEM (I) OF THIS ITEM THAT IS CONTROLLED BY A COVERED ENTITY OR SERVICE PROVIDER THAT IS:

(I) REQUIRED TO COMPLY WITH:

1. TITLE V OF THE FEDERAL GRAMM–LEACH–BLILEY ACT;

2. THE FEDERAL HEALTH INFORMATION TECHNOLOGY FOR ECONOMIC AND CLINICAL HEALTH ACT; OR

3. REGULATIONS PROMULGATED UNDER § 264(C) OF THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996; AND

(II) IN COMPLIANCE WITH THE INFORMATION SECURITY REQUIREMENTS OF APPLICABLE STATUTES OR REGULATIONS IDENTIFIED IN ITEM

**(I) OF THIS ITEM; OR ~~PROTECTED HEALTH INFORMATION THAT IS COLLECTED BY A COVERED ENTITY OR BUSINESS ASSOCIATION GOVERNED BY THE PRIVACY SECURITY AND BREACH NOTIFICATION RULES IN 45 C.F.R. PARTS 160 AND 164, ESTABLISHED UNDER THE FEDERAL HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 AND THE FEDERAL HEALTH INFORMATION TECHNOLOGY FOR ECONOMIC AND CLINICAL HEALTH ACT;~~**

**~~(2) A COVERED ENTITY GOVERNED BY THE PRIVACY SECURITY AND BREACH NOTIFICATION RULES IN 45 C.F.R. PARTS 160 AND 164, ESTABLISHED UNDER THE FEDERAL HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 AND THE FEDERAL HEALTH INFORMATION TECHNOLOGY FOR ECONOMIC AND CLINICAL HEALTH ACT, TO THE EXTENT THAT THE COVERED ENTITY MAINTAINS PATIENT INFORMATION IN THE SAME MANNER AS MEDICAL INFORMATION OR PROTECTED HEALTH INFORMATION AS DESCRIBED IN ITEM (1) OF THIS SECTION; OR~~**

**~~(3)~~ (2) INFORMATION COLLECTED AS PART OF A CLINICAL TRIAL SUBJECT TO THE FEDERAL POLICY FOR THE PROTECTION OF HUMAN SUBJECTS, IN ACCORDANCE WITH:**

**(I) GOOD CLINICAL PRACTICE GUIDELINES ISSUED BY THE INTERNATIONAL COUNCIL FOR HARMONISATION OF TECHNICAL REQUIREMENTS FOR PHARMACEUTICALS FOR HUMAN USE; OR**

**(II) HUMAN SUBJECT PROTECTION REQUIREMENTS OF THE U.S. FOOD AND DRUG ADMINISTRATION.**

**14–4603.**

**IT IS THE INTENT OF THE GENERAL ASSEMBLY THAT:**

**(1) CHILDREN SHOULD BE AFFORDED PROTECTIONS NOT ONLY BY ONLINE PRODUCTS SPECIFICALLY DIRECTED AT THEM, BUT BY ALL ONLINE PRODUCTS THEY ARE REASONABLY LIKELY TO ACCESS;**

**(2) COVERED ENTITIES THAT DEVELOP AND PROVIDE ONLINE ~~SERVICES~~ PRODUCTS THAT CHILDREN ARE REASONABLY LIKELY TO ACCESS SHALL ENSURE THE BEST INTERESTS OF CHILDREN WHEN DESIGNING, DEVELOPING, AND PROVIDING THOSE ONLINE PRODUCTS;**

**(3) ALL COVERED ENTITIES THAT OPERATE IN THE STATE AND PROCESS CHILDREN'S DATA IN ANY CAPACITY SHALL DO SO IN A MANNER CONSISTENT WITH THE BEST INTERESTS OF CHILDREN;**

**(4) IF A CONFLICT ARISES BETWEEN COMMERCIAL INTERESTS AND THE BEST INTERESTS OF CHILDREN, COVERED ENTITIES THAT DEVELOP ONLINE PRODUCTS LIKELY TO BE ACCESSED BY CHILDREN SHALL ~~GIVE PRIORITY TO~~ <u>PRIORITIZE</u> THE PRIVACY, SAFETY, AND WELL–BEING OF CHILDREN ~~OVER THOSE COMMERCIAL~~ ~~INTERESTS; AND~~;**

**(5) NOTHING IN THIS SUBTITLE MAY BE CONSTRUED TO ~~INFRINGE ON THE EXISTING RIGHTS AND FREEDOMS OF CHILDREN~~ <u>REQUIRE A COVERED ENTITY TO MONITOR OR CENSOR THIRD–PARTY CONTENT OR OTHERWISE IMPACT THE EXISTING RIGHTS AND FREEDOMS OF ANY PERSON; AND</u>**

**<u>(6) NOTHING IN THIS SUBTITLE MAY BE CONSTRUED TO DISCRIMINATE AGAINST CHILDREN ON THE BASIS OF RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, GENDER IDENTITY, SEX, OR SEXUAL ORIENTATION</u>.**

**14–4604.**

**(A) (1) SUBJECT TO PARAGRAPH (2) OF THIS SUBSECTION, A COVERED ENTITY THAT PROVIDES AN ONLINE PRODUCT REASONABLY LIKELY TO BE ACCESSED BY CHILDREN SHALL PREPARE A DATA PROTECTION IMPACT ASSESSMENT FOR THE ONLINE PRODUCT.**

**(2) ON OR BEFORE APRIL 1, 2026, A COVERED ENTITY SHALL PREPARE A DATA PROTECTION IMPACT ASSESSMENT FOR ANY ONLINE PRODUCT THAT:**

**(I) MEETS THE CRITERIA UNDER PARAGRAPH (1) OF THIS SUBSECTION;**

**(II) IS OFFERED TO THE PUBLIC ON OR BEFORE APRIL 1, 2026; AND**

**(III) WILL CONTINUE TO BE OFFERED TO THE PUBLIC AFTER JULY 1, 2026.**

**(3) FOR AN ONLINE PRODUCT THAT MEETS THE CRITERIA UNDER PARAGRAPH (1) OF THIS SUBSECTION AND IS INITIALLY OFFERED TO THE PUBLIC AFTER APRIL 1, 2026, A COVERED ENTITY SHALL COMPLETE A DATA PROTECTION IMPACT ASSESSMENT ~~WITHIN 90 DAYS AFTER THE ONLINE PRODUCT IS OFFERED TO THE PUBLIC~~.**

**(B) THE DATA PROTECTION IMPACT ASSESSMENT SHALL:**

**(1) IDENTIFY THE PURPOSE OF THE ONLINE PRODUCT;**

**(2) IDENTIFY HOW THE ONLINE PRODUCT USES CHILDREN'S DATA;**

**(3) DETERMINE WHETHER THE ONLINE PRODUCT IS DESIGNED ~~AND OFFERED~~ IN A MANNER CONSISTENT WITH THE BEST INTERESTS OF CHILDREN REASONABLY LIKELY TO ACCESS THE ONLINE PRODUCT THROUGH CONSIDERATION OF:**

**(I) WHETHER THE DATA MANAGEMENT OR PROCESSING PRACTICES OF THE ONLINE PRODUCT COULD LEAD TO CHILDREN EXPERIENCING OR BEING TARGETED BY CONTACTS THAT WOULD RESULT IN:**

**1. REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO ~~THE CHILD~~ CHILDREN;**

**2. REASONABLY FORESEEABLE AND EXTREME PSYCHOLOGICAL OR EMOTIONAL HARM TO ~~THE CHILD~~ CHILDREN;**

**3. A HIGHLY OFFENSIVE INTRUSION ON ~~THE CHILD'S~~ CHILDREN'S REASONABLE EXPECTATION OF PRIVACY; OR**

**4. DISCRIMINATION AGAINST ~~THE CHILD~~ CHILDREN BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, GENDER IDENTITY, SEX, OR SEXUAL ORIENTATION;**

**(II) WHETHER THE DATA MANAGEMENT OR PROCESSING PRACTICES OF THE ONLINE PRODUCT COULD PERMIT CHILDREN TO ~~WITNESS,~~ PARTICIPATE IN~~,~~ OR BE SUBJECT TO CONDUCT THAT WOULD RESULT IN:**

**1. REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO ~~THE CHILD~~ CHILDREN;**

**2. REASONABLY FORESEEABLE AND EXTREME PSYCHOLOGICAL OR EMOTIONAL HARM TO ~~THE CHILD~~ CHILDREN;**

**3. A HIGHLY OFFENSIVE INTRUSION ON ~~THE CHILD'S~~ CHILDREN'S REASONABLE EXPECTATION OF PRIVACY; OR**

**4. DISCRIMINATION AGAINST ~~THE CHILD~~ CHILDREN BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, GENDER IDENTITY, SEX, OR SEXUAL ORIENTATION;**

**(III) WHETHER THE DATA MANAGEMENT OR PROCESSING PRACTICES OF THE ONLINE PRODUCT ARE REASONABLY EXPECTED TO ALLOW**

**CHILDREN BECOMING PARTY TO OR EXPLOITED BY A CONTRACT THROUGH THE ONLINE PRODUCT THAT WOULD RESULT IN:**

**1. REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO ~~THE CHILD~~ <u>CHILDREN</u>;**

**2. REASONABLY FORESEEABLE AND EXTREME PSYCHOLOGICAL OR EMOTIONAL HARM TO ~~THE CHILD~~ <u>CHILDREN</u>;**

**3. A HIGHLY OFFENSIVE INTRUSION ON ~~THE CHILD'S~~ <u>CHILDREN'S</u> REASONABLE EXPECTATION OF PRIVACY; OR**

**4. DISCRIMINATION AGAINST ~~THE CHILD~~ <u>CHILDREN</u> BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, <u>GENDER IDENTITY,</u> SEX, OR SEXUAL ORIENTATION;**

**(IV) ~~WHETHER TARGETED ADVERTISING SYSTEMS USED BY THE ONLINE PRODUCT WOULD RESULT IN:~~**

**~~1. REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO THE CHILD;~~**

**~~2. REASONABLY FORESEEABLE AND EXTREME PSYCHOLOGICAL OR EMOTIONAL HARM TO THE CHILD;~~**

**~~3. A HIGHLY OFFENSIVE INTRUSION ON THE CHILD'S REASONABLE EXPECTATION OF PRIVACY; OR~~**

**~~4. DISCRIMINATION AGAINST THE CHILD BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, SEX, OR SEXUAL ORIENTATION;~~**

**~~(V)~~ WHETHER THE ONLINE PRODUCT USES SYSTEM DESIGN FEATURES TO INCREASE, SUSTAIN, OR EXTEND THE USE OF THE ONLINE PRODUCT, INCLUDING THE AUTOMATIC PLAYING OF MEDIA, REWARDS FOR TIME SPENT, AND NOTIFICATIONS THAT WOULD RESULT IN:**

**1. REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO ~~THE CHILD~~ <u>CHILDREN</u>;**

**2. REASONABLY FORESEEABLE AND EXTREME PSYCHOLOGICAL OR EMOTIONAL HARM TO ~~THE CHILD~~ <u>CHILDREN</u>;**

3. A HIGHLY OFFENSIVE INTRUSION ON ~~THE CHILD'S~~ CHILDREN'S REASONABLE EXPECTATION OF PRIVACY; OR

4. DISCRIMINATION AGAINST ~~THE CHILD~~ CHILDREN BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, GENDER IDENTITY, SEX, OR SEXUAL ORIENTATION;

~~(VI)~~ (V) WHETHER, HOW, AND FOR WHAT PURPOSE THE ONLINE PRODUCT COLLECTS OR PROCESSES ~~SENSITIVE~~ PERSONAL DATA OF CHILDREN AND WHETHER THOSE PRACTICES WOULD RESULT IN:

1. REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO ~~THE CHILD~~ CHILDREN;

2. REASONABLY FORESEEABLE AND EXTREME PSYCHOLOGICAL OR EMOTIONAL HARM TO ~~THE CHILD~~ CHILDREN;

3. A HIGHLY OFFENSIVE INTRUSION ON ~~THE CHILD'S~~ CHILDREN'S REASONABLE EXPECTATION OF PRIVACY; OR

4. DISCRIMINATION AGAINST ~~THE CHILD~~ CHILDREN BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, GENDER IDENTITY, SEX, OR SEXUAL ORIENTATION;

~~(VII)~~ (VI) WHETHER AND HOW DATA COLLECTED TO UNDERSTAND THE EXPERIMENTAL IMPACT OF THE PRODUCT REVEALS DATA MANAGEMENT OR DESIGN PRACTICES THAT WOULD RESULT IN:

1. REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO ~~THE CHILD~~ CHILDREN;

2. REASONABLY FORESEEABLE AND EXTREME PSYCHOLOGICAL OR EMOTIONAL HARM TO ~~THE CHILD~~ CHILDREN;

3. A HIGHLY OFFENSIVE INTRUSION ON ~~THE CHILD'S~~ CHILDREN'S REASONABLE EXPECTATION OF PRIVACY; OR

4. DISCRIMINATION AGAINST ~~THE CHILD~~ CHILDREN BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, GENDER IDENTITY, SEX, OR SEXUAL ORIENTATION;

~~(VIII)~~ (VII) WHETHER ALGORITHMS USED BY THE ONLINE PRODUCT WOULD RESULT IN:

1. REASONABLY FORESEEABLE AND MATERIAL PHYSICAL OR FINANCIAL HARM TO ~~THE CHILD~~ CHILDREN;

2. REASONABLY FORESEEABLE AND EXTREME PSYCHOLOGICAL OR EMOTIONAL HARM TO ~~THE CHILD~~ CHILDREN;

3. A HIGHLY OFFENSIVE INTRUSION ON ~~THE CHILD'S~~ CHILDREN'S REASONABLE EXPECTATION OF PRIVACY; OR

4. DISCRIMINATION AGAINST ~~THE CHILD~~ CHILDREN BASED ON RACE, COLOR, RELIGION, NATIONAL ORIGIN, DISABILITY, GENDER IDENTITY, SEX, OR SEXUAL ORIENTATION; AND

~~(IX)~~ (VIII) ANY OTHER FACTOR THAT MAY INDICATE THAT THE ONLINE PRODUCT IS DESIGNED ~~AND OFFERED~~ IN A MANNER THAT IS INCONSISTENT WITH THE BEST INTERESTS OF CHILDREN; AND

(4) INCLUDE A DESCRIPTION OF STEPS THAT THE COVERED ENTITY HAS TAKEN AND WILL TAKE TO COMPLY WITH THE DUTY TO ACT IN A MANNER CONSISTENT WITH THE BEST INTERESTS OF CHILDREN.

(C) (1) A DATA PROTECTION IMPACT ASSESSMENT PREPARED BY A COVERED ENTITY FOR THE PURPOSE OF COMPLIANCE WITH ANY OTHER LAW COMPLIES WITH THIS SECTION IF THE ASSESSMENT MEETS THE REQUIREMENTS OF THIS SECTION.

(2) A SINGLE DATA PROTECTION IMPACT ASSESSMENT MAY CONTAIN MULTIPLE SIMILAR PROCESSING OPERATIONS THAT PRESENT SIMILAR RISKS ONLY IF EACH RELEVANT ONLINE PRODUCT IS ADDRESSED.

**14–4605.**

A COVERED ENTITY REQUIRED TO COMPLETE A DATA PROTECTION IMPACT ASSESSMENT UNDER § 14–4604 OF THIS SUBTITLE SHALL:

(1) MAINTAIN DOCUMENTATION OF THE ASSESSMENT FOR AS LONG AS THE ONLINE PRODUCT IS LIKELY TO BE ACCESSED BY CHILDREN;

(2) REVIEW EACH DATA PROTECTION IMPACT ASSESSMENT AS NECESSARY TO ACCOUNT FOR MATERIAL CHANGES TO PROCESSING PERTAINING TO THE ONLINE PRODUCT WITHIN 90 DAYS OF SUCH MATERIAL CHANGES;

(3) ~~CONFIGURE~~ NOTWITHSTANDING ANY OTHER LAW, CONFIGURE ALL DEFAULT PRIVACY SETTINGS PROVIDED TO CHILDREN BY THE ONLINE

PRODUCT TO OFFER A HIGH LEVEL OF PRIVACY, UNLESS THE COVERED ENTITY CAN DEMONSTRATE A COMPELLING REASON THAT A DIFFERENT SETTING IS IN THE BEST INTERESTS OF CHILDREN;

(4) PROVIDE ANY PRIVACY INFORMATION, TERMS OF SERVICE, POLICIES, AND COMMUNITY STANDARDS CONCISELY, PROMINENTLY, AND USING CLEAR LANGUAGE SUITED TO THE AGE OF CHILDREN LIKELY TO ACCESS THE ONLINE PRODUCT; AND

(5) PROVIDE PROMINENT, ACCESSIBLE, AND RESPONSIVE TOOLS TO HELP CHILDREN OR THEIR PARENTS OR GUARDIANS, IF APPLICABLE, EXERCISE THEIR PRIVACY RIGHTS AND REPORT CONCERNS.

**14–4606.**

(A) A COVERED ENTITY THAT PROVIDES AN ONLINE PRODUCT THAT IS ACCESSED OR REASONABLY LIKELY TO BE ACCESSED BY CHILDREN MAY NOT:

(1) PROCESS THE PERSONAL DATA OF A CHILD IN A WAY THAT IS INCONSISTENT WITH THE BEST INTERESTS OF CHILDREN REASONABLY LIKELY TO ACCESS THE ONLINE PRODUCT;

(2) PROFILE A CHILD BY DEFAULT, UNLESS:

(I) THE COVERED ENTITY CAN DEMONSTRATE THAT THE COVERED ENTITY HAS APPROPRIATE SAFEGUARDS IN PLACE TO ENSURE THAT PROFILING IS CONSISTENT WITH THE BEST INTERESTS OF CHILDREN WHO ACCESS OR ARE REASONABLY LIKELY TO ACCESS THE ONLINE PRODUCT; AND

(II) 1. PROFILING IS NECESSARY TO PROVIDE THE REQUESTED ONLINE PRODUCT, AND IS DONE ONLY WITH RESPECT TO THE ASPECTS OF THE ONLINE PRODUCT THAT THE CHILD IS ACTIVELY AND KNOWINGLY ENGAGED WITH; OR

2. THE COVERED ENTITY CAN DEMONSTRATE A COMPELLING REASON THAT PROFILING IS IN THE BEST INTERESTS OF CHILDREN;

(3) PROCESS PERSONAL DATA OF A CHILD THAT IS NOT REASONABLY NECESSARY TO PROVIDE AN ONLINE PRODUCT THAT THE CHILD IS ACTIVELY AND KNOWINGLY ENGAGED WITH;

(4) PROCESS THE PERSONAL DATA OF A CHILD END USER FOR ANY REASON OTHER THAN A REASON FOR WHICH THAT PERSONAL DATA WAS COLLECTED;

(5) PROCESS ANY PRECISE GEOLOCATION ~~INFORMATION~~ DATA OF A CHILD BY DEFAULT, UNLESS:

(I) THE COLLECTION OF THE PRECISE GEOLOCATION ~~INFORMATION~~ DATA IS STRICTLY NECESSARY FOR THE COVERED ENTITY TO PROVIDE THE ONLINE PRODUCT; AND

(II) THE PRECISE GEOLOCATION DATA IS PROCESSED ONLY FOR THE LIMITED TIME THAT IS NECESSARY TO PROVIDE THE ONLINE PRODUCT;

(6) PROCESS ANY PRECISE GEOLOCATION ~~INFORMATION~~ DATA OF A CHILD WITHOUT PROVIDING AN OBVIOUS SIGNAL TO THE CHILD FOR THE DURATION THAT THE PRECISE GEOLOCATION ~~INFORMATION~~ DATA IS BEING COLLECTED;

(7) USE DARK PATTERNS TO:

(I) CAUSE A CHILD TO PROVIDE PERSONAL DATA BEYOND WHAT IS REASONABLY EXPECTED TO PROVIDE THE ONLINE PRODUCT;

(II) CIRCUMVENT PRIVACY PROTECTIONS; OR

(III) TAKE ANY ACTION THAT THE COVERED ENTITY KNOWS, OR HAS REASON TO KNOW, IS NOT IN THE BEST INTERESTS OF CHILDREN WHO ACCESS OR ARE REASONABLY LIKELY TO ACCESS THE ONLINE PRODUCT;

(8) PROCESS ANY PERSONAL DATA FOR THE PURPOSE OF ESTIMATING THE AGE OF A CHILD THAT IS ACTIVELY AND KNOWINGLY ENGAGED WITH AN ONLINE PRODUCT THAT IS NOT REASONABLY NECESSARY TO PROVIDE THE ONLINE PRODUCT; OR

(9) ~~ALLOW A CHILD'S PARENT, GUARDIAN, OR ANY OTHER CONSUMER TO MONITOR THE CHILD'S ONLINE ACTIVITY OR TRACK THE CHILD'S LOCATION, WITHOUT PROVIDING AN OBVIOUS SIGNAL TO THE CHILD WHEN THE CHILD IS BEING MONITORED OR TRACKED~~ ALLOW A PERSON OTHER THAN A CHILD'S PARENT OR GUARDIAN TO MONITOR THE CHILD'S ONLINE ACTIVITY WITHOUT FIRST NOTIFYING THE CHILD AND THE CHILD'S PARENT OR GUARDIAN.

(B) A COVERED ENTITY THAT PROVIDES AN ONLINE PRODUCT THAT IS ACCESSED OR REASONABLY LIKELY TO BE ACCESSED BY CHILDREN MAY ALLOW A CHILD'S PARENT OR GUARDIAN TO MONITOR THE CHILD'S ONLINE ACTIVITY OR TRACK THE CHILD'S LOCATION, WITHOUT PROVIDING AN OBVIOUS SIGNAL TO THE CHILD WHEN THE CHILD IS BEING MONITORED OR TRACKED.

**(C) IN MAKING A DETERMINATION AS TO WHETHER AN ONLINE PRODUCT IS REASONABLY LIKELY TO BE ACCESSED BY CHILDREN, A COVERED ENTITY MAY NOT COLLECT OR PROCESS ANY PERSONAL DATA BEYOND WHAT IS REASONABLY NECESSARY TO MAKE THE DETERMINATION.**

**14–4607.**

**(A) WITHIN 5 BUSINESS DAYS AFTER RECEIVING A WRITTEN REQUEST FROM THE DIVISION, A COVERED ENTITY THAT PROVIDES AN ONLINE PRODUCT REASONABLY LIKELY TO BE ACCESSED BY CHILDREN SHALL PROVIDE TO THE DIVISION A LIST OF ALL DATA PROTECTION IMPACT ASSESSMENTS THE COVERED ENTITY HAS COMPLETED UNDER § 14–4604 OF THIS SUBTITLE.**

**(B) (1) WITHIN 7 BUSINESS DAYS AFTER RECEIVING A WRITTEN REQUEST FROM THE DIVISION, A COVERED ENTITY SHALL PROVIDE TO THE DIVISION ANY DATA PROTECTION IMPACT ASSESSMENT COMPLETED UNDER § 14–4604 OF THIS SUBTITLE.**

**(2) THE DIVISION MAY EXTEND BEYOND 7 DAYS THE AMOUNT OF TIME ALLOWED FOR A COVERED ENTITY TO PRODUCE A DATA PROTECTION IMPACT ASSESSMENT.**

**(C) TO THE EXTENT THAT ANY DISCLOSURE REQUIRED UNDER SUBSECTION (B) OF THIS SECTION INCLUDES INFORMATION SUBJECT TO ATTORNEY–CLIENT PRIVILEGE OR WORK–PRODUCT PROTECTION, THE DISCLOSURE MAY NOT CONSTITUTE A WAIVER OF THAT PRIVILEGE OR PROTECTION.**

**14–4608.**

**(A) A VIOLATION OF THIS SUBTITLE:**

**(1) IS AN UNFAIR, ABUSIVE, OR DECEPTIVE TRADE PRACTICE; AND**

**(2) EXCEPT FOR § 13–410 OF THIS ARTICLE, IS SUBJECT TO THE ENFORCEMENT PROVISIONS CONTAINED IN TITLE 13 OF THIS ARTICLE.**

**(B) A COVERED ENTITY THAT VIOLATES THIS SUBTITLE IS SUBJECT TO A CIVIL PENALTY NOT EXCEEDING:**

**(1) $2,500 PER AFFECTED CHILD FOR EACH NEGLIGENT VIOLATION; AND**

**(2) $7,500 PER AFFECTED CHILD FOR EACH INTENTIONAL VIOLATION.**

**(C) THE DIVISION SHALL PAY ALL FINES, PENALTIES, AND EXPENSES COLLECTED BY THE DIVISION UNDER THIS SUBSECTION INTO THE GENERAL FUND WITH THE INTENT THAT FINES, PENALTIES, AND EXPENSES BE USED TO FULLY OFFSET ANY COSTS INCURRED BY THE DIVISION IN CONNECTION WITH THIS SUBTITLE.**

**14–4609.**

**(A) IF A COVERED ENTITY IS IN SUBSTANTIAL COMPLIANCE WITH THE REQUIREMENTS OF §§ 14–4604 THROUGH 14–4606 OF THIS SUBTITLE, THE DIVISION SHALL PROVIDE WRITTEN NOTICE TO THE COVERED ENTITY BEFORE FILING AN ACTION UNDER § 14–4608 OF THIS SUBTITLE.**

**(B) NOTICE GIVEN UNDER SUBSECTION (A) OF THIS SECTION SHALL IDENTIFY THE SPECIFIC PROVISIONS OF THIS SUBTITLE THAT THE DIVISION ALLEGES HAVE BEEN OR ARE BEING VIOLATED.**

**(C) A COVERED ENTITY MAY NOT BE LIABLE FOR A CIVIL PENALTY FOR A VIOLATION FOR WHICH NOTICE IS GIVEN UNDER SUBSECTION (A) OF THIS SECTION IF THE COVERED ENTITY:**

**(1) HAS COMPLETED A DATA PROTECTION IMPACT ASSESSMENT UNDER § 14–4604(A)(2) OF THIS SUBTITLE FOR EXISTING ONLINE PRODUCTS THAT ARE REASONABLY LIKELY TO BE ACCESSED BY CHILDREN;**

**(2) HAS COMPLETED A DATA PROTECTION IMPACT ASSESSMENT UNDER § 14–4604(A)(3) OF THIS SUBTITLE PRIOR TO OFFERING TO THE PUBLIC A NEW ONLINE PRODUCT THAT IS REASONABLY LIKELY TO BE ACCESSED BY CHILDREN;**

**(3) CURES THE VIOLATION SPECIFIED IN THE DIVISION'S NOTICE WITHIN 90 DAYS AFTER ISSUANCE OF THE NOTICE UNDER SUBSECTION (A) OF THIS SECTION;**

**(4) PROVIDES THE DIVISION WITH A WRITTEN STATEMENT THAT THE ALLEGED VIOLATION HAS BEEN CURED; AND**

**(5) TAKES MEASURES TO PREVENT ANY FUTURE VIOLATION THAT THE DIVISION AGREED TO BE SUFFICIENT.**

**14–4610.**

**NOTHING IN THIS SUBTITLE MAY BE INTERPRETED OR CONSTRUED TO:**

**(1) PROVIDE A PRIVATE RIGHT OF ACTION UNDER THIS SUBTITLE OR ANY OTHER LAW;**

**(2) IMPOSE LIABILITY IN A MANNER THAT IS INCONSISTENT WITH 47 U.S.C. § 230;**

**(3) PREVENT OR PRECLUDE A CHILD FROM DELIBERATELY OR INDEPENDENTLY SEARCHING FOR OR SPECIFICALLY REQUESTING CONTENT; OR**

**(4) REQUIRE A COVERED ENTITY TO IMPLEMENT AN AGE–GATING REQUIREMENT.**

**14–4611.**

**NOTWITHSTANDING ANY OTHER LAW, A DATA PROTECTION IMPACT ASSESSMENT IS PROTECTED AS CONFIDENTIAL AND SHALL BE EXEMPT FROM PUBLIC DISCLOSURE, INCLUDING UNDER THE MARYLAND PUBLIC INFORMATION ACT.**

**14–4612.**

**(A) WHEREVER POSSIBLE, LAW RELATING TO CONSUMERS' PERSONAL DATA SHOULD BE CONSTRUED TO HARMONIZE WITH THE PROVISIONS OF THIS SUBTITLE.**

**(B) IN THE EVENT OF A CONFLICT BETWEEN OTHER LAWS AND THIS SUBTITLE, THE PROVISIONS OF THE LAW THAT AFFORD THE GREATEST PROTECTION FOR THE RIGHT OF PRIVACY FOR CONSUMERS SHALL CONTROL.**

**14–4613.**

**THIS SUBTITLE MAY BE CITED AS THE MARYLAND AGE–APPROPRIATE DESIGN CODE ACT.**

SECTION 2. AND BE IT FURTHER ENACTED, That this Act shall take effect October 1, 2024.