IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NETCHOICE, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-25-0322 |
| ANTHONY G. BROWN, *et al.*, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this case, Plaintiff NetChoice challenges the constitutionality of the State of Maryland's recently enacted Age-Appropriate Design Code Act, MD. CODE ANN., CL §§ 14-4801–14-4813 ("Kids Code").  *See generally* (ECF No. 27).  On April 28, 2025, NetChoice filed its operative eight-Count Amended Complaint for Declaratory and Injunctive Relief (ECF No. 27), alleging various facial and as-applied First Amendment claims, due process vagueness challenges, and preemption claims against Defendants Anthony G. Brown, in his official capacity as the Maryland Attorney General and William D. Gruhn, in his official capacity as the Chief of the Division of Consumer Protection of the Maryland Office of the Attorney General (collectively, "Defendants" or "the State").  By Memorandum Opinion and Order dated November 24, 2025, this Court denied Defendants' Motion to Dismiss the Amended Complaint (ECF No. 35).  *See* (ECF Nos. 58, 59).  Defendants filed their Answer (ECF No. 63), and this Court issued an initial Scheduling Order (ECF No. 64).  At Defendants' request, this then Court entered a preliminary 45-day stay of discovery pending the State's retention of outside counsel.  *See* (ECF No. 68).  At the conclusion of that preliminary stay of discovery,

1

the parties filed a joint Status Report addressing remaining scheduling disputes, including NetChoice's intent to file a Second Amended Complaint.  (ECF No. 77 ¶ 6.)

Now pending before this Court is NetChoice's Motion for Leave to File a Second Amended Complaint (ECF No. 78) ("Plaintiff's Motion" or "Motion for Leave to Amend"), in which it seeks to allege an additional claim under 42 U.S.C. § 1983 that the Kids Code violates the Commerce Clause of the United States Constitution.[1]  *See* (ECF No. 80 ¶¶ 297–317).  Consistent with the parties' proposed briefing schedule, *see* (ECF No. 79), Defendants have responded in Opposition (ECF No. 82), and Plaintiff has replied (ECF No. 87).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  For the reasons set forth below, Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 78) is GRANTED.

## BACKGROUND

This Court extensively reviewed the factual history of this case in its prior Memorandum Opinion denying Defendants' Motion to Dismiss.  *See* (ECF No. 58 at 4–13). The Court adopts that background herein and recounts below only those facts most relevant to the pending Motion for Leave to Amend (ECF No. 78).

### I.    Kids Code

In 2024, the Maryland General Assembly enacted the Kids Code, MD. CODE ANN., CL §§ 14-4801–14-4813, to facilitate "the protection of online privacy of children" in Maryland

---

[1] The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several states, and with the Indian tribes."  U.S. Const., art. I, § 8, cl. 3.  As the Supreme Court has explained, the implied inverse of the Commerce Clause "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirit Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019) (collecting cases).

by regulating covered entities' data collection and sharing practices. (ECF No. 58 at 1; ECF No. 35 Ex. 1 at 2, 3.) The Kids Code generally applies to online products, services, or features that are "reasonably likely to be accessed by children." MD. CODE ANN., CL §§ 14-4804(a)(1), 14-4806. Pursuant to the Kids Code, covered entities must prepare annual data protection impact assessments and ensure that they provide their products and services "in a manner consistent with the best interests of children." *Id.* § 14-4803(3); *see also id.* §§ 14-1801, 14-4806. In relevant part, the statute defines a "covered entity" to include any for-profit legal entity that "[d]oes business in the State," "[c]ollects consumers' personal data or uses another entity to collect consumers' personal data on its behalf," "determines the purposes and means of the processing of consumers' personal data," and satisfies enumerated annual revenue thresholds. *Id.* § 14-4801(h)(1). It defines "consumer" as "an individual who is a resident of" Maryland. *Id.* § 14-4801(g)(1).

## II.    Procedural History

As this Court has previously noted, NetChoice is a self-described "nonprofit trade association for Internet companies," including Amazon, Google, Meta, Nextdoor, Pinterest, Netflix, Reddit, and X, among others. (ECF No. 58 at 1 (quoting ECF No. 27 ¶¶ 22, 25).) At present, NetChoice is a plaintiff in numerous civil lawsuits, including at least eighteen actions challenging laws in some seventeen states. *See* Litigation Center, NETCHOICE, https://netchoice.org/litigation/ (last visited July 1, 2026).

On February 3, 2025, NetChoice initiated this action against Defendants by filing in this Court a six-Count Complaint for Declaratory and Injunctive relief, alleging various constitutional and preemption challenges. *See* (ECF No. 1). On April 28, 2025, NetChoice

filed the operative eight-Count Amended Complaint for Declaratory and Injunctive Relief (ECF No. 27), in which it alleges 42 U.S.C. § 1983 claims that: (1) the Kids Code's "best interests of children" standard violates the First Amendment, as incorporated against the states by the Fourteenth Amendment, both facially and as-applied to NetChoice's members and their current and prospective users (Count I); (2) the Kids Code's "reasonably likely to be accessed by children" standard violates the First Amendment, as incorporated against the states by the Fourteenth Amendment, both facially and as-applied to NetChoice's members and their current and prospective users (Count II); (3) the Kids Code's "best interests of children" standard is void for vagueness under the First and Fourteenth Amendments (Count III); (4) the Kids Code's "reasonably likely to be accessed by children" standard is void for vagueness under the First and Fourteenth Amendments (Count IV); (5) the Kids Code's Data Protection Impact Assessment requirement, MD. CODE ANN., CL § 14-4804, violates the First Amendment, as incorporated against the states by the Fourteenth Amendment, both facially and as-applied to NetChoice's members and their current and prospective users (Count V); (6) the Kids Code's restrictions on data, dark patterns, and monitoring, MD. CODE ANN., CL § 14-4806, violate the First Amendment, as incorporated against the states by the Fourteenth Amendment, both facially and as-applied to NetChoice's members and their current and prospective users (Count VI); (7) under *Ex parte Young*,[2] the Kids Code is preempted by the federal Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501 *et seq.* (Count VII); and (8) under *Ex parte Young*, Kids Code §§ 14-4804 and 14-4806 are preempted by Section 230 of

---

[2] Under *Ex parte Young*, 209 U.S. 123 (1908), "if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) (citing *Ex parte Young*, 209 U.S. at 155–56).

the federal Communications Decency Act, 47 U.S.C. § 230, (Count VIII). (ECF No. 27 at 23–51).

Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 35), which this Court denied following a hearing in November 2025. (ECF Nos. 57, 58, 59.) Defendants then filed their Answer (ECF No. 63), and, on January 6, 2026, this Court issued an initial Scheduling Order (ECF No. 64). Thereafter, the parties filed separate motions requesting modification to the Scheduling Order. *See* (ECF No. 66; ECF No. 67). On February 2, 2026, the Court held an off-the-record telephone conference in which Defendants expressed their intent to seek outside counsel and requested a corresponding stay of discovery. This Court stayed discovery for 45 days and left pending the other scheduling disputes raised in the parties' motions to modify the Scheduling Order. *See* (ECF No. 68). Notwithstanding the preliminary stay of discovery, the initial Scheduling Order set February 20, 2026, as the deadline to amend the pleadings. (ECF No. 64 at 2; ECF No. 68 at 1–2 (discussing scope of "45-day preliminary stay of discovery").) NetChoice did not seek to modify that deadline during the telephone conference of February 2, 2026.

After the preliminary stay of discovery expired on March 20, 2026, NetChoice apparently notified Defendants' counsel for the first time of its intent to seek leave to amend. *See* (ECF No. 87 Ex. A at 4–5; ECF No. 77-1 ¶ 9). On March 23, 2026, this Court held another telephone conference and instructed the parties to submit a joint proposed order addressing their scheduling disputes. On April 3, 2026, the parties filed a Joint Proposed Scheduling Order (ECF No. 77-1), including a proposed briefing schedule for their dispute as to NetChoice's Motion for Leave to Amend (ECF No. 78) filed the same day. Consistent

5

with that briefing schedule, the parties completed briefing as to NetChoice's Motion (ECF No. 78) on May 29, 2026. This matter is now ripe for review.

## STANDARD OF REVIEW

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend its complaint "once as a matter of course" before a responsive pleading is served or by leave of court or written consent of the adverse party. In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). The U.S. Court of Appeals for the Fourth Circuit has explained that Rule 15 "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (collecting cases). The matter, however, is committed to the discretion of the district court, *see Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011), which may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010).

An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Although "district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny," *In re Triangle Cap. Corp. Sec. Lit.*, 988 F.3d 743, 750 (4th Cir. 2021), "it does not follow that every plaintiff seeking leave to amend claims must demonstrate that the claims can withstand a Rule 12(b)(6) motion," *Stedman v. Dean*, Civ. No. SAG-24-1779, 2026 WL 1642844, at *2 (D. Md. June 8, 2026); *accord Williams v. Cello P'ship*, --- F. Supp. 3d ---, 2026 WL

371125, at *6 (D. Md. 2026).  Rather, as Judge Bredar of this Court has explained, "claims of futility based on susceptibility to dismissal under Rule 12(b)(6) must identify deficiencies that are 'obvious on the face of the proposed amendment.'"  *Daulatzai v. Maryland*, 338 F.R.D. 587, 589 (D. Md. 2021) (quoting *Johnson*, 785 F.2d at 510)).

## ANALYSIS

In its Motion for Leave to Amend (ECF No. 78), NetChoice seeks to add a single claim alleging that the Kids Code violates the Commerce Clause of the United States Constitution, art. I, § 8, cl. 3, both facially and as applied.  (ECF No. 78-1 at 6; ECF No. 80 ¶ 316.)  It alleges that the Kids Code violates that Clause's implied nondiscrimination principle, known as the dormant Commerce Clause doctrine, which "prohibits state laws that unduly restrict interstate commerce."  *Tenn. Wine & Spirit Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019) (collecting cases); *see* (ECF No. 78-1 at 6).  "'Discrimination' in this context means 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'"  *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 666 (4th Cir. 2024) (quoting *Oregon Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994)).  Defendants raise two arguments in Opposition (ECF No. 82) to amendment.  First, they contend that the proposed amendment should be denied as untimely under the operative Scheduling Order.  (*Id.* at 14–17.)  Second, and alternatively, they contend that amendment should be denied as futile because NetChoice does not plausibly allege a Commerce Clause violation.  (*Id.* at 17–36.)

I.      **Timeliness of request for leave to amend**

As Judge Gallagher of this Court has explained, cases in which a party seeks leave to amend a complaint after the scheduling order's deadline for amendment "highlight[] the

tension between two applicable Federal Rules of Civil Procedure." *Medline Indus., Inc. v. York Building Prods. Co., Inc.*, 702 F. Supp. 3d 403, 407 (D. Md. 2023).  "Although Rule 15(a)(2) advocates that the Court should 'freely' afford parties leave to amend, Rule 16(b)(4) dictates that a scheduling order set by the Court 'may be modified only for good cause and with the judge's consent.'"  *Id.* (quoting Fed. R. Civ. P. 16(b)(4)).  The Fourth Circuit has addressed this tension by holding that "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."  *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *accord Eichin v. Ethicon Endo-Surgery, LLC*, 173 F.4th 124, 127 (4th Cir. 2026).  In this case, the deadline to amend pleadings passed without any request for modification on February 20, 2026.  *See* (ECF No. 64 at 2; ECF Nos. 66, 67 (both requesting other modifications but not seeking to adjust deadline to amend)).  At that time, discovery in this case was stayed "pending entry of appearance of Defendants' new counsel."  (ECF No. 68 at 1.)[3]  Nevertheless, because NetChoice seeks to amend the pleadings after the applicable deadline, it must demonstrate good cause for amendment.

"[A] finding of good cause under Rule 16 depends on the diligence of the party seeking amendment . . . ."  *Eichin*, 173 F.4th at 127 (quoting *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 n.1 (4th Cir. 2020)).  Specifically, "the party seeking to amend the scheduling order must 'show that the deadlines cannot reasonably be met despite the party's diligence[.]'"  *Medline Indus., Inc.*, 702 F. Supp. 3d at 407 (quoting *Cook v. Howard*, 484 F. App'x 805, 815 (4th

---

[3]  Although NetChoice contends that the stay of discovery should be construed as a broader stay of this case, such a reading unduly stretches the language of this Court's orders, which reference only a limited "stay of discovery."  *See* (ECF No. 68 at 1 ("[D]iscovery in this case shall be subject to a preliminary STAY of forty-five (45) days pending entry of appearance of Defendants' new counsel"); *id.* at 2 (referring to "45-day preliminary stay of discovery"); ECF No. 79 ¶ 2 ("The stay of discovery entered as of February 3, 2026, expired by its own terms as of March 20, 2026.")).

Cir. 2012)).  When assessing diligence, "[t]he Court considers 'whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice [any] non-moving party.'"  *Valentine v. Monahan*, 350 F.R.D. 22, 28 (D. Md. 2025) (quoting *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 107 (D. Md. 2013)).

NetChoice has satisfied its burden to demonstrate good cause by showing that it acted diligently in this case.  In the off-the-record telephone conference held February 2, 2026, Defendants requested a stay of discovery because they intended to retain outside counsel, a process which would take up to five weeks.[4]  *See* (ECF No. 68 at 1).  Defendants' outside counsel did not begin to enter appearance in this matter until March 23, 2026, more than a month after the deadline to amend the pleadings.  *See, e.g.*, (ECF No. 69).  That is, at the time the deadline to amend the pleadings passed on February 20, 2026, Defendants remained in the process of retaining outside counsel such that discovery, at least, could not proceed.  NetChoice has shown that it conferred with Defendants' outside counsel regarding its intent to amend the pleadings almost as soon as Defendants retained such counsel.  *See* (ECF No. 87 Ex. A; ECF No. 77-1 ¶ 9).  Accordingly, NetChoice acted with diligence by conferring with defense counsel regarding the amendment as soon as possible given the unique circumstances presented by the prolonged process to obtain outside counsel.

Moreover, the length and effects of the delay in requesting leave to amend are minimal and do not appear to prejudice Defendants.  The delay between the expiration of the deadline

---

[4] NetChoice asserts that, "based on the February 2 outreach of the attorneys at the Attorney General's Office, and the representations of those counsel at the off-the-record conference the same day," it understood this stay to apply more broadly to "all substantive matters[.]"  (ECF No. 87 at 10, 11 n.1.)  As noted above, this understanding conflicts with the plain language of this Court's orders.  To the extent the parties intended to request a broader stay, they should have raised the matter to this Court.

to amend on February 20, 2026, and NetChoice's notification to defense counsel of intent to request leave to amend on March 25, 2026, is some 35 days.  Approximately 42 days elapsed in total between the deadline to amend and NetChoice's filing of its Motion for Leave to Amend (ECF No. 78) on April 3, 2026.  Although Defendants oppose amendment, the parties agreed that briefing of leave to amend would not delay discovery as to any proposed claim under the Commerce Clause.  (ECF No. 77-1 ¶ 10.)  Discovery in this case remains in its infancy and only began in earnest upon the expiration of the initial 45-day preliminary stay of discovery on March 20, 2026.  Thus, Plaintiff filed its Motion for Leave to Amend within two weeks of the initiation of full discovery.  Such minimal delay without effect on discovery as to the proposed claim does not prejudice Defendants.  *Cf. Valentine*, 350 F.R.D. at 30 (denying leave to amend beyond deadline in part because discovery had already run for two-and-a-half years).

In short, NetChoice could not have conferred with Defendants' current counsel about its intent to request leave to amend prior to March 20, 2026, the date upon which Defendants advised Plaintiff of their new counsel.  At that time, NetChoice promptly notified Defendants' new counsel of its intent to seek leave to amend.  *See* (ECF No. 87 Ex. A at 4–5).  Although Defendants contend that leave to amend should be denied because NetChoice cites no new facts and offers only a new legal theory, *see* (ECF No. 82 at 14–17), "the 'touchstone' of Rule 16(b)(4)'s 'good cause requirement is diligence.'"  *Allegis Grp., Inc. v. Bero*, 689 F. Supp. 3d 81, 104 (D. Md. 2023) (quoting *Faulconer*, 808 F. App'x at 152).  NetChoice has established that it acted with the diligence demanded under Rule 16(b)(4).  *See, e.g., Eichin*, 173 F.4th at 127.

## II.     Leave to amend is appropriate under Federal Rule Civil Procedure 15(a)

NetChoice's proposed amendment is appropriate under the liberal standard elucidated in Federal Rule Civil Procedure 15. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (collecting cases). As explained above, in exercising discretion as to leave to amend pleadings under Rule 15, district courts should grant such leave "freely" but may deny it "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). "[D]istrict courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny," *In re Triangle Cap. Corp. Sec. Lit.*, 988 F.3d 743, 750 (4th Cir. 2021), but, as Judge Gallagher of this Court has recently noted, "it does not follow that every plaintiff seeking leave to amend claims must demonstrate that the claims can withstand a Rule 12(b)(6) motion." *Stedman v. Dean*, Civ. No. SAG-24-1779, 2026 WL 1642844, at *2 (D. Md. June 8, 2026). Indeed, "[s]uch a requirement would render superfluous the Fourth Circuit's definition of a futile claim as one that is 'clearly insufficient or frivolous on its face.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)); *accord Williams v. Cello P'ship*, --- F. Supp. 3d ---, 2026 WL 371125, at *6 (D. Md. 2026). In this case, NetChoice proposes an amendment to add an additional cause of action alleging that the Kids Code violates the dormant Commerce Clause doctrine both facially and as applied because it (1) is extraterritorial in its regulation and (2) unduly burdens interstate commerce. *See, e.g.*, (ECF No. 80 ¶¶ 299, 304–307, 310, 312.) Defendants argue that the proposed amendment should be denied as futile because it fails to state a claim for relief. (ECF No. 82 at 17–36.)

11

Although NetChoice alleges two theories of its facial and as-applied challenges to the Kids Code under the dormant Commerce Clause doctrine, the futility inquiry before this Court asks only if the proposed amendment "is clearly insufficient and frivolous on its face." *Daulatzai*, 338 F.R.D. at 589 (quoting *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 880 (4th Cir. 2020)).  When evaluating a proposed amendment for futility, the Court addresses overall claims rather than individual theories.  *See, e.g.*, *Nicholes v. Combined Ins. Co. of Am.*, 2017 WL 2802870, at *6 (S.D.W.V. June 28, 2017) (holding proposed amendment not futile unless "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief" (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)); *Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 266 (D. Md. 2022) (holding amendment "would be futile because the Third Amended Complaint fails to state *any plausible claims*" (emphasis added)).  In this case, the proposed amendment is not clearly frivolous or insufficient on its face because NetChoice has alleged that the Kids Code imposes an undue burden on interstate commerce.[5]

As relevant to NetChoice's proposed amendment, courts have recognized various ways in which a law may run afoul of the dormant Commerce Clause doctrine.  *Lacks v. Ultragenyx Pharm., Inc.*, 768 F. Supp. 3d 705, 717 (D. Md. 2025).  First, "[s]tate laws that discriminate against interstate commerce . . . facially, in practical effect, or in purpose . . . are subject to 'a virtually *per se* rule of invalidity.'"  *Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 535, 543

---

[5] In their briefing, the parties separately address NetChoice's allegations regarding extraterritoriality and undue burden on interstate commerce.  As noted above, these allegations form separate theories within NetChoice's proposed challenge to the Kids Code under the dormant Commerce Clause doctrine.  This Court concludes that NetChoice's proposed amendment is not insufficient on its face based on the allegations of an undue burden on interstate commerce, however, and thus does not address the remaining extraterritoriality theory. That is, NetChoice has satisfied its burden as to leave to amend by alleging at least one theory of unconstitutionality that is not frivolous on its face. *See Johnson*, 785 F.2d at 510.

(4th Cir. 2013) (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 454–55 (1992)). "Under this variant of 'strict scrutiny analysis,' a court must invalidate the challenged law 'unless the state demonstrates both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means.'" *Id.* (internal quotation marks and citations omitted) (first quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 334 (4th Cir. 2001) and then quoting *Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 567 (4th Cir. 2005)). Second, even where a law is not discriminatory, it may still be invalid under the dormant Commerce Clause doctrine if it "unjustifiably . . . burden[s] the interstate flow of articles of commerce." *Lacks*, 768 F. Supp. 3d at 717 (quoting *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 665 (4th Cir. 2024)). As the Fourth Circuit has recognized, the "fact-intensive" nature of these analyses "counsels against a premature dismissal." *Colon Health Ctrs. of Am.*, 733 F.3d at 546.

In *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), the Supreme Court elucidated a balancing test applicable to nondiscriminatory state laws that nonetheless burden out-of-state commercial interests. Under *Pike*, if the "statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 397 U.S. at 142. "The putative benefits of a challenged law are evaluated under the rational basis test, though 'speculative' benefits will not pass muster." *Colon Health Ctrs. of Am.*, 733 F.3d at 545 (internal citations omitted). Thus, the Supreme "Court 'has left the courtroom door open to challenges premised on . . . nondiscriminatory burdens,' while simultaneously warning that *Pike* has never been applied to 'prevent a State

from regulating the sale of an ordinary consumer good within its own borders on nondiscriminatory terms.'" *Just Puppies, Inc.*, 123 F.4th at 669–70 (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 379, 391 (2023)). "Although state laws 'frequently survive' *Pike* scrutiny, '[t]he fact-intensive character of this inquiry . . . counsels against premature dismissal.'" *Id.* at 670 (internal citations omitted) (first quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 339 (2008); and then quoting *Colon Health Ctrs. of Am.*, 733 F.3d at 546).

As Judge Hollander of this Court has previously noted, "'[o]nly a small number of cases' have invalidated a law under *Pike* balancing, and those cases generally involved state 'regulation of activities that are inherently national or require a uniform system of regulation,' such as interstate transportation." *Just Puppies, Inc. v. Frosh (Just Puppies I)*, 565 F. Supp. 3d 665, 725 (D. Md. 2021) (quoting *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012)) *aff'd* 123 F.4th 652 (4th Cir. 2024). The Fourth Circuit has previously recognized that "[g]iven the broad reach of the Internet, it is difficult to see how a blanket regulation of Internet material . . . can be construed to have only a local effect." *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004). Under this view, laws that regulate the internet may be unconstitutional under *Pike* to the extent a plaintiff can establish that the relevant laws "impair the free flow of goods," *Just Puppies I*, 565 F. Supp. 3d at 725, in a manner so burdensome as to outweigh the identified local interests at stake. A statute will not be unconstitutional pursuant to *Pike*, however, where it merely regulates a "method of operating in a retail market[.]" *Nat'l Ass'n of Optometrists*, 682 F.3d at 1151.

Under the first inquiry of the *Pike* framework, the proposed Second Amended Complaint is not obviously insufficient on its face. NetChoice alleges that the Kids Code

14

imposes a substantial burden on interstate commerce because it "is impossible for websites to limit the [Kids Code's] effects to Maryland residents." (ECF No. 80 ¶¶ 304, 305–12.) It alleges that there is "no reliable method" by which to differentiate "Maryland residents from other users," so websites who meet the Kids Code's definition of "covered entities" must collect residency data from all users, including casual users of search services. (*Id.* ¶¶ 305–307.) It further alleges that if a user declines to provide residency data, websites will either have to deny that user access altogether or apply Maryland's requirements regardless of whether that user is a Maryland resident. (*Id.* ¶¶ 307–309.) Finally, it alleges that such members cannot reliably decline to provide services to Maryland users because the members cannot reliably determine when a user resides in Maryland. (*Id.* ¶ 309.) Accepting the truth of these allegations as required at this pleading stage, the amendment raises a substantial burden to interstate commerce that does not appear to be insufficient on its face. *See, e.g.*, *PSINet, Inc.*, 362 F.3d at 240 (suggesting internet regulation may be unconstitutional under *Pike* because of internet's inherently national nature);[6] *Flynt v. Bonta*, 131 F.4th 918, 932 (9th Cir. 2025) ("Absent discrimination that favors in-state economic interests, state laws can create a substantial burden against interstate commerce based on 'inconsistent regulation of activities that are inherently national or require a uniform system of regulation.'" (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 952 (9th Cir. 2013)); *Ass'n for Accessible Meds. v. Frosh*, 887 F.3d 664, 672 (4th Cir. 2018) (explaining state statute violated Commerce Clause

---

[6] The Fourth Circuit decided *PSINet, Inc. v. Chapman*, 362 F.3d 227 (4th Cir. 2004), more than two decades ago. In the intervening twenty-two years, entities providing online services, including NetChoice's members, likely have improved the tools that they use to monitor and serve their users. *See* (ECF No. 82 at 26 (arguing that *PSINet* decision is premised on an "outmoded view of the internet"). The only question before the Court here, however, is whether the proposed amendment is clearly insufficient or frivolous on its face.

where it "effectively seeks to compel manufacturers and wholesalers to act in accordance with Maryland law outside of Maryland"); *Daulatzai*, 338 F.R.D. at 589 (quoting *Johnson*, 785 F.2d at 510).

Similarly, NetChoice's proposed amendment is not obviously insufficient under the second portion of the *Pike* balancing test. Although the State must identify a legitimate local purpose served by the challenged law, it need only "advance a 'putative' benefit; hard evidence is not required." *Just Puppies I*, 565 F. Supp. 3d at 725. Once the State has put forth such a benefit, the challenged statute "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. As district courts have cautioned in cases challenging regulation of the internet, however, a plaintiff must both allege that the challenged statute fails the *Pike* balancing test *and* that the law in effect has "a discriminatory character." *Def. Distributed v. Platkin*, 697 F. Supp. 3d 241, 269 & n.17 (D.N.J. 2023). Here, both parties agree that the State of Maryland has a "compelling interest [in] protecting minors." (ECF No. 80 ¶ 127); *see also* (ECF No. 82 at 35). There appears to exist significant dispute, however, as to the degree to which the Kids Code serves that interest. *See, e.g.*, (ECF No. 80 ¶ 127); (ECF No. 82 at 35–36). Nevertheless, Plaintiff's proposed allegations—that is, that the Kids Code's alleged burdens outweigh Maryland's interest by requiring collection of data from *all* users even if a covered entity attempts to block Maryland's users—are not clearly insufficient or frivolous on their face. (ECF No. 80 ¶¶ 127, 297, 307–310.)

Such allegations do not obviously fail to address some element of the *Pike* balancing test such that denial of leave to amend would be appropriate. *See Daulatzai*, 338 F.R.D. at 589

16

(quoting *Johnson*, 785 F.2d at 510)).[7]  Under Rule 15(a)'s discretionary standard that leave to amend should be "freely" granted "when justice so requires," the proposed amendments are not insufficient on their face.  Fed. R. Civ. P. 15(a)(2); *see also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  Rather, "[t]he complexity of the arguments advanced by counsel on both sides indicates that the issue . . . is not obviously frivolous."  *Johnson*, 785 F.2d at 511.  To the extent Defendants assert that any claim under the dormant Commerce Clause doctrine would not survive a motion to dismiss pursuant to Rule 12(b)(6), they remain free to fully brief those arguments in an appropriate filing.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 78) is GRANTED.

A separate Order follows.

/s/
_____
Richard D. Bennett
United States Senior District Judge

---

[7] Defendants cite several cases in which courts have rejected dormant Commerce Clause challenges under *Pike*. *See, e.g.* (ECF No. 82 at 28–30 (surveying caselaw)).  Many of these cases, however, addressed such claims in postures wholly distinct from that before this Court, which presents only the limited question of whether leave to amend is appropriate.  *See, e.g.*, *Jensen v. Md. Cannabis Admin.*, 151 F.4th 169 (4th Cir. 2025) (reviewing denial of temporary restraining order and preliminary injunction); *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472 (4th Cir. 2025) (reviewing denial of motion for preliminary injunction); *Exxon Corp. v. Governor of Md.*, 437 U.S. 117 (1978) (reviewing reversal of trial court's grant of partial summary judgment); *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 558 (6th Cir. 2021) (reviewing grant of motion for preliminary injunction) *abrogation on other grounds as recognized by Tenn. Conf. of NAACP v. Lee*, 139 F.4th 557, 563 (6th Cir. 2025).